UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD PLECHNER,

                           Petitioner,

        v.

RONALD HAYNES,

                           Respondent.

CASE NO. 3:24-CV-5187-TMC-DWC

REPORT AND RECOMMENDATION

Noting Date: December 13, 2024

        The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Richard Plechner filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court judgment and sentence. *See* Dkt. 6. On March 5, 2024, Petitioner filed his Petition raising four grounds for relief. *Id*. After review of the relevant record, the Court concludes Petitioner failed to properly plead Ground 4. Petitioner also failed to exhaust Grounds 1 and 3 and these grounds are procedurally defaulted. Finally, the Court concludes the state court's adjudication of Ground 2 was not contrary to, nor an unreasonable application of, clearly established federal law. The Court finds an evidentiary hearing is not necessary and recommends the Petition be denied and a certificate of appealability not be issued.

REPORT AND RECOMMENDATION - 1

1

## I.     Background

2     A.     <u>Factual Background</u>

3          The Court of Appeals of the State of Washington ("state court of appeals") summarized

4     the facts of Petitioner's case as follows:

5          Tina Gumm met Richard Plechner while she resided at the home of Leslie
          Ellerbrock. Gumm described Plechner as neither friend nor sexual partner. After
6          departing from the Ellerbrock home, Gumm dwelled in other homes and shelters,
          and occasionally saw Plechner. At some unidentified time, the car of Jasmine
7          Palma, Plechner's girlfriend, struck Gumm's car.

8          On September 17, 2019, Tina Gumm encountered Richard Plechner on the street
          outside a domestic violence shelter. Plechner informed Gumm that her car had been
9          damaged. Gumm had yet to see the damage. She had slept the previous two nights
          in another car she owned.

10
          Between the hours of 11 p.m. and 3:30 a.m. on September 17-18, Tina Gumm
11          visited Plechner's house to inquire about the car. After speaking with Plechner,
          Gumm fell asleep on a bed in his house. At 7:30 a.m., Gumm awoke to feel
12          Plechner's hands inside her pants and in contact with her vagina.

13          Despite the nonconsenting and intimate contact, Tina Gumm drove Richard
          Plechner that morning to WalMart and an AM/PM mart. She then accompanied
14          Plechner to the domestic violence shelter to view the damage to Gumm's car.

15          In late September 2019, Tina Gumm lodged at Jasmine Palma's house for two days.
          At 10:00 a.m. on one of these mornings, Palma and Richard Plechner, while inside
16          Palma's residence, locked Gumm outside as she smoked a cigarette. Either Plechner
          or Palma called the police. The police arrived at the residence and directed Gumm
17          to leave Palma's address. On October 3, 2019, two or more days after her expulsion
          from Palma's residence, Gumm reported the touching of her vagina by Plechner to
18          the Shelton Police Department.

19          . . .

20          The State of Washington charged Richard Plechner with one count of indecent
          liberties with a victim incapable of consent by reason of being physically helpless
21          to have sexual contact and one count of assault in the fourth degree with sexual
          motivation. . . . . The jury trial began on January 8, 2020. . . . . The jury returned
22          guilty verdicts on both charges.

23

24

1  *State v. Plechner*, 21 Wash. App. 2d 1074, ** 1, 6, *review denied*, 200 Wash. 2d 1016, 520 P.3d

2  967 (2022); *see also* Dkt. 16-2 (Exhibit 30).

3        B.  Procedural Background

4            1.  *Direct Appeal and Personal Restraint Petition*

5        Petitioner challenged his Mason County Superior Court ("trial court") judgment and

6  sentence on direct appeal. *See* Dkt. 16-1 (Exhibit 2). Petitioner also filed a personal restraint

7  petition ("PRP") while his direct appeal was pending, which was consolidated with his direct

8  appeal and PRP. *See* Dkts. 16-1 – 16-2 (Exhibits 2-29). The state court of appeals affirmed

9  Petitioner's judgement and sentence. Dkt. 16-2 (Exhibit 30). Petitioner sought discretionary

10  review by the Washington State Supreme Court ("state supreme court"). *Id.* (Exhibits 31-33). On

11  December 7, 2022, the state supreme court denied Petitioner's petition for review without

12  comment. *Id.* (Exhibit 35). The state court of appeals issued its mandate certifying that the

13  decision became final on December 7, 2022. *Id.* (Exhibit 36).

14            2.  *Federal Petition*

15        On March 5, 2024, Petitioner filed his Petition. Dkts. 1, 6. In the Petition, Petitioner

16  raised the following four grounds for relief:

17        1.  Under the Fourteenth Amendment, there was insufficient evidence to convict
18           petitioner of Indecent Liberties;

19        2.  Violation of the Sixth Amendment by ineffective assistance of counsel;

20        3.  Violation of the Fifth Amendment by not considering newly presented evidence in the
         CrR 7.5, 7.8, and the Personal Restraint Petition; and

21        4.  Violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments for prosecutorial
         misconduct.

22  Dkt. 6. On June 13, 2024, Respondent filed, and served on Petitioner, an Answer and the relevant

23  state court record. Dkts. 15, 16. The Court also directed Respondent to file a supplemental state

24

court record, but did not accept additional briefing by either party. Dkts. 17, 19 (supplemental state court record). Petitioner did not filed a traverse.[1]

## II.    Discussion

Respondent maintains: (1) Petitioner failed to exhaust Grounds 1, 3, and 4 in-part and is procedurally barred from federal review of these grounds; and (2) the state court's adjudication of Grounds 2 and 4 in-part was not contrary to, nor an unreasonable application of, clearly established federal law. Dkt. 15.

### A.  Improperly Raised Claims

Initially, the Court finds that Petitioner has not properly raised a prosecutorial misconduct claim. In Ground 4, Petitioner raises a prosecutorial misconduct claim but does not specify the prosecution's conduct that gives rise to a claim. Dkt. 6 at 29. Rather, Petitioner states, in full,

> In the interest of brevity, the petitioner asks that the court incorporate the arguments of his counsel in the state courts and the arguments presented in the other grounds presented above.

*Id*. Petitioner did not attach any state court briefing to his Petition. *See* Dkt. 6. In fact, the claims Petitioner presented to the state court were not available to this Court until Respondent filed the state court record several months after Petitioner initiated this case. Dkt. 16.[2]

Under Rule 2 of the Rules Governing Section 2254 Cases, Petitioner must specify each ground for relief, the facts supporting the ground for relief, and the relief requested. Rule 2(c) of the Rules Governing Section 2254 Cases; *Vrh v. Ndoh*, 2020 WL 2489464, at *1 (E.D. Cal. May

---

[1] While Petitioner did not file a traverse, he has filed multiple motions after the deadline to file a traverse had expired. *See* Dkts. 18, 21, 26-28. The Court has reviewed these records and finds the motions are not proper responses to the Answer and, if the motions were, the motions would not alter the result of this Report and Recommendation.

[2] The Court notes Petitioner appears to have attempted to provide more details about a prosecutorial misconduct claim when he sought Court-appointed counsel and leave to amend. *See* Dkt. 11. The Court denied Petitioner's motion and directed him on how to seek leave to amend. Dkt. 14. Petitioner has not properly sought leave to amend his Petition.

14, 2020) ("Rule 2(c) requires that each ground for relief be clearly stated, along with providing specific factual allegations that support the grounds for relief."). A habeas petitioner who generally references allegations raised in other case records and briefs "patently fail[s] to comply with Rule 2(c)." *Adams v. Armontrout,* 897 F.2d 332, 333 (8th Cir. 1990). Federal courts need not "sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief." *Id.* (citing *Williams v. Kullman,* 722 F.2d 1048, 1051 (2d Cir. 1983)). The particularized facts which entitle a petitioner to habeas relief "must consist of sufficient detail to enable the court to determine, *from the face of the petition alone,* whether the petition merits further habeas corpus review." *Id.* at 334 (emphasis added).

In the Answer, Respondent identified the prosecutorial misconduct claims based on the claims raised on direct appeal in the state court. Dkt. 15. In Petitioner's petition for discretionary review filed in the state supreme court, he alleged the prosecutor committed misconduct during closing arguments when he: (a) argued his personal beliefs about the witness credibility, (b) misstated the law, (c) unfairly impugned defense counsel, and (d) disparaged the defense counsel. Dkt. 16-2 at 218-27; *see also* Dkt. 16-1 at 162-71. Respondent provides a response to these four claims. *See* Dkt. 15. However, Petitioner has not confirmed these are the claims he is raising. Moreover, in an earlier attempt to supplement his Petition, Petitioner raised entirely different prosecutorial misconduct claims than those identified by Respondent. *See* Dkt. 11-1 at 30-32. In the proposed supplemental petition, Petitioner asserted that the prosecutor's failure to present two or three witnesses at trial resulted in prosecutorial misconduct. *Id*. at 31. Thus, the record does not provide any insight into the claims Petitioner is actually seeking to raise.[3]

---

[3] The Court notes Petitioner provided discussion in his Statement of the Case related to the prosecutor's conduct during closing arguments (Dkt. 6); however, in light of the record as a whole, this is not sufficient to meet the Rule 2(c) requirements in this case.

1   Because Petitioner has not adequately stated his prosecutorial misconduct claims, the

2   Court is left to comb the records, guess Petitioner's claims, and potentially review alleged errors

3   in the state courts' decisions that are not before this Court. And, without properly pleading a

4   claim, the Court cannot determine if the prosecutorial misconduct claims Petitioner is attempting

5   to raise have been properly exhausted. The Court cannot glean from the Petition the prosecutorial

6   misconduct claims Petitioner is attempting to raise nor did Petitioner clearly provide the specific

7   factual allegations to support any such claim. As Petitioner has not complied with Rule 2, the

8   Court finds Ground 4 was not properly pled. Accordingly, the Court recommends Ground 4 be

9   dismissed.

10        B.  Exhaustion and Procedural Default

11        Respondent argues Grounds 1 and 3 are unexhausted and barred from federal review.

12   Dkt. 15.[4]

13        1.  *Exhaustion of State Remedies*

14        "[A] state prisoner must normally exhaust available state judicial remedies before a

15   federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275

16   (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been

17   afforded] a meaningful opportunity to consider allegations of legal error without interference

18   from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must

19   give the state courts one full opportunity to resolve any constitutional issues by invoking one

---

21        [4] Respondent maintains a large portion of Ground 4 is unexhausted and the state courts' adjudication of the
remaining portion of Ground 4 was not contrary to, nor an unreasonable application of, clearly established federal

22   law. Dkt. 15. As this Court has determined Ground 4 should be dismissed, the Court declines to consider
Respondent's arguments. However, to the extent Petitioner was attempting to assert the four prosecutorial

23   misconduct claims raised in his direct appeal, the Court has reviewed Respondent's Answer and the state court
record and finds that these four claims are either unexhausted and procedurally defaulted or that the state court's

24   decision as to the prosecutorial misconduct claims was not contrary to, nor involved an unreasonable application of,
clearly established Federal law.

complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

Respondent contends Petitioner failed to raise Grounds 1 and 3 as federal constitutional violations before the state supreme court. Dkt. 15 at 11-15. As stated above, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray*, 518 U.S. 162–63. Vague references to broad constitutional principles such as due process, equal protection and a fair trial do not satisfy the exhaustion requirement. *Id*. at 162; *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir.1999); *Gatlin v. Madding,* 189 F.3d 882, 888 (9th Cir. 1999). Even where the petitioner argues an error deprived him of a "fair trial" or the "right to present a defense," unless the petitioner expressly states he is alleging a specific federal

constitutional violation, the petitioner has not properly exhausted the claim. *Johnson v. Zenon*, 88 F.3d 828, 830–31 (9th Cir. 1996). Moreover, the fact that a state law claim was "essentially the same" as the claim subsequently asserted in federal court does not satisfy the exhaustion requirement. *Id.* at 830. Citation to Washington case law, even if the case applied a standard similar to the federal standard, does not suffice to apprise the Washington courts of a federal claim. *Hiivala,* 195 F.3d at 1106–07.

In Ground 1, Petitioner alleges there was insufficient evidence to convict him of indecent liberties. Dkt. 6 at 18-22. Petitioner raised an insufficiency of evidence claim in the supplemental statement of additional grounds attached to his PRP. *See* Dkt. 16-2 at 51. However, in his motion for discretionary review filed with the state supreme court, Petitioner did not raise a sufficiency of the evidence claim. *See id*. at 203. Rather, in the motion, Petitioner's counsel stated that Petitioner "raised several arguments in his statement of additional grounds for review, which the Court of Appeals rejected. Those arguments are incorporated by reference here." *Id*. at 236. The record does not reflect counsel attached Petitioner's statement of additional grounds to the motion for discretionary review.

"[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). "[T]his Court has found failure to satisfy the fair presentation requirement where the Court was required to 'read beyond a petition or brief' to uncover petitioner's federal claim." *Little v. Haynes*, 2021 WL 2211309, at *6 (W.D. Wash. May 12, 2021). While Petitioner may have attempted to incorporate claims by reference to his statement of additional grounds, he did not attach the statement of additional grounds to

1    the motion for discretionary review. Rather, Petitioner's attempted "incorporation by reference"

2    required the state supreme court to review Petitioner's filings with the state court of appeals.  As

3    such, Petitioner required the state supreme court to read beyond his motion for discretionary

4    review. Therefore, Petitioner did not fairly present Ground 1 to the state supreme court.

5    Accordingly, the Court finds Ground 1 was not properly exhausted.

6         In Ground 3, Petitioner contends his Fifth Amendment rights were violated when the

7    state court did not properly consider newly presented evidence in his PRP. Dkt. 6 at 25-29.

8    Petitioner raised this claim in his *pro se* petition for discretionary review filed with the state

9    supreme court. *See* Dkt. 16-2 at 270, 274-82. Petitioner, however, did not raise this as a federal

10   constitutional claim. *See id*. Petitioner did not identify how the state court's alleged error violated

11   the federal Constitution and, at most, Petitioner cited to one Ninth Circuit case, but the case he

12   cited was for a different proposition. *See id*. 281 (citing *Hart v. Gomez*, 174 F.3d 1067, 1073 (9th

13   Cir. 1999) for the proposition that his trial counsel was ineffective). The citation to *Hart* did not

14   fairly present Ground 3 to the Washington courts because *Hart* is irrelevant to any constitutional

15   claim that might be gleaned from Ground 3. *See Fields v. Waddington*, 401 F.3d 1018, 1021-22

16   (9th Cir. 2005) ("Citation of irrelevant federal cases does not provide a state court with a fair

17   opportunity to apply controlling legal principles to the facts bearing upon his constitutional

18   claim.") (quoting *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2004) (internal quotation

19   marks omitted)); *Casey*, 386 F.3d at 914 (internal quotations omitted) ("If a petitioner fails to

20   alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is

21   unexhausted regardless of its similarity to the issues raised in state court."); *Smith v. McKenna*,

22   2009 WL 1181261, at *9 (W.D. Wash. Apr. 30, 2009) (finding the petitioner did not exhaust

23   when he made no reference to any specific federal constitutional guarantee or federal case law in

24

support of the relief he sought). Because Petitioner did not present Ground 3 as a federal

constitutional claim at each level of the state courts, he did not properly exhaust Ground 3.

Accordingly, the Court finds Ground 3 was not properly exhausted.

### 2. *Procedural Default*

Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*,

290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal

claim when it is clear the state court has been presented with the federal claim but declined to

reach the issue for procedural reasons or it is clear the state court would hold the claim

procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now

preclude the petitioner from raising his claim at the state level, the claim is considered

"procedurally defaulted" and the federal courts are barred from reviewing the petition on the

merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

Grounds 1 and 3 are procedurally defaulted because if Petitioner attempted to present

these claims in a subsequent PRP, the state court would find the claims barred by Washington

State law. Washington State imposes a one-year statute of limitations on filing a PRP or other

post-conviction challenges. RCW § 10.73.090. The state court of appeals issued a mandate

finalizing Petitioner's direct appeal and stating his direct appeal became final on December 7,

2022. Dkt. 16-2 at 335. The time to file a petition or motion for post-conviction relief expired in

December 2023, one year after Petitioner's direct appeal became final. *See* RCW 10.73.090(1),

(3)(b). As the one-year statute of limitations has passed, Petitioner is barred from filing a

subsequent PRP. *See id.* at (1); *see also Shumway v. Payne*, 223 F.3d 982, 988 n. 22 (9th Cir.

2000) (RCW 10.73.090 has been found by the Ninth Circuit to be an independent and adequate

state law barring federal habeas review).

1      Further, under Washington State law, the state court of appeals will not consider a second

2  or successive PRP unless the petitioner certifies he has not filed a previous petition on similar

3  grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See*

4  RCW 10.73.140. Petitioner has not presented facts which could show good cause for his failure

5  to raise Grounds 1 and 3 at each level of his PRP. Therefore, Grounds 1 and 3 are also subject to

6  an implied procedural bar because the grounds would be "prohibited by an independent,

7  adequate, and mandatory rule of state procedure, R.C.W. § 10.73.140, making a return to state

8  court futile." *See Bolar v. Luna*, 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

9      Petitioner would be precluded from asserting Grounds 1 and 3 in the state court;

10  therefore, these grounds are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at

11  731-32, 735 n.1; *Casey*, 386 F.3d at 920; *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D.

12  Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court

13  available and is now barred from doing so by a state procedural rule, exhaustion is satisfied

14  because no state remedy remains available, but the petitioner has procedurally defaulted on his

15  claim.").

16      However, the procedural default will be excused and a petitioner will be entitled to

17  federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as

18  a result of the alleged violation of federal law, or demonstrate that failure to consider the claims

19  will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124,

20  1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must

21  show some objective factor external to the defense prevented him from complying with the

22  state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488

23  (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that

24

1    the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and

2    substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

3    *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

4           Only in an "extraordinary case" may the habeas court grant the writ without a showing of

5    cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional

6    violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477

7    U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the

8    evidence in light of new reliable evidence, the petitioner must show "it is more likely than not

9    that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v.*

10   *Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

11          Here, Petitioner fails to show some objective factor external to his defense prevented him

12   from complying with the State's procedural bar rule. Petitioner also fails to show the alleged trial

13   errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of

14   constitutional dimensions, and thus has not shown prejudice. Furthermore, Petitioner has not

15   provided new, reliable evidence showing he is actually innocent and, therefore, this is not the

16   kind of extraordinary instance where this Court should review the claim despite the absence of a

17   showing of cause. As Petitioner failed to show cause or prejudice to excuse his procedural

18   default, the Court is barred from reviewing Grounds 1 and 3 on the merits.

19          In sum, there is no evidence Petitioner exhausted the state court remedies to the highest

20   state court for Grounds 1 and 3. As Petitioner bears the burden of proving he exhausted the

21   available state court remedies and as there is no evidence showing Petitioner gave the state court

22   a full and fair opportunity to determine if a federal constitutional violation occurred, Grounds 1

23   and 3 were not properly exhausted. *See Braley v. Crownes*, 2005 WL 2304273, at *1 (E.D. Cal.

24

Sept. 20, 2005) (dismissing petition for failure to exhaust where the petitioner claimed he was entitled to be released, but had not raised the claims to the highest state court). Further, Grounds 1 and 3 are procedurally defaulted. As Petitioner has not overcome the procedural default, the Court recommends Grounds 1 and 3 be dismissed. *See Casey*, 386 F.3d at 920-21.

      C.  <u>Review of State Court's Adjudication</u>

      Respondent maintains the state courts' adjudication of Ground 2 was not contrary to, nor an unreasonable application of, clearly established federal law. Dkt. 15.[5]

      1.  *Standard of Review*

      Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

      Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An

---

[5] Respondent also argues Grounds 1 and 4 should be denied on the merits and Ground 3 is not cognizable in habeas. *See* Dkt. 15. As the Court finds Ground 4 fails to comply with Rule 2 and finds Grounds 1 and 3 are barred from federal review, the Court declines to consider Grounds 1, 3, and 4 on the merits.

unreasonable application of Supreme Court precedent occurs "if the state court identifies the

correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts

of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court

decision involves an unreasonable application of Supreme Court precedent "'if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529

U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas

courts to presume the correctness of state courts' factual findings unless applicants rebut this

presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of

state court decisions under §2254(d)(1) is "limited to the record that was before the state court

that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

2.  *Ineffective Assistance of Counsel (Ground 2)*

In Ground 2, Petitioner appears to allege his counsel was ineffective for failing to pursue

a line of questioning related to the victim, Tina Gumm, being charged with taking a motor

vehicle without permission and for failing to argue to the Court that Jasmine Palma's testimony

was necessary. Dkt. 6 at 23-25.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-part

test for determining whether a defendant received ineffective assistance of counsel. First, a

defendant must demonstrate his attorney's performance was deficient, which requires showing

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by

the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

In determining Petitioner's trial counsel was not ineffective, the state court of appeals stated:

> To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation fell below an objective standard of reasonableness and (2) defense counsel's deficient representation prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984); *State v. Vazquez,* 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). Courts indulge a strong presumption that counsel is effective. *State v. Vazquez,* 198 Wn.2d 239, 247.
>
> A defendant must first show that trial counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances. When

1

2

doing so, the defendant must show in the record the absence of legitimate strategic
or tactical reasons supporting the challenged conduct by counsel. *State v. Vazquez*,
198 Wn.2d 239, 248 (2021); *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d
1251 (1995).

3

4

. . . .

5

6

7

Richard Plechner also argues that defense counsel performed ineffectively for
failing to impeach Tina Gumm with a pending auto theft charge. A party may
impeach a witness with a crime only after a criminal conviction. ER 609(a).
Plechner does not establish that his defense counsel could have employed a pending
charge for impeachment.

8

. . . .

9

10

[Plechner contends] the trial court failed to permit his calling Jasmine Palma as a
witness. Nevertheless, Plechner possessed no such right. His attorney's decision
not to call Palma as a witness fell within the attorney's reasonable judgment in
determining trial strategy.

11

*Plechner*, 21 Wash. App. 2d 1074; Dkt. 16-2 at 187-88, 190.

12

First, Petitioner contends his attorney, Gene Austin, was ineffective for failing to cross-

13

examine Gumm regarding a criminal charge pending against her. The record shows that, during

14

the cross-examination of Gumm, Austin raised questions regarding Gumm's previous

15

relationships. Dkt. 19-1 at 227-28. The prosecutor objected and, while being heard on the

16

argument, Austin stated that Petitioner believed Gumm returned to her previous partner to

17

attempt to steal his truck. *Id.* at 233. After she stole the truck, Gumm wanted Palma to assist her

18

in her case. *Id*. But, they had a "falling out" and Gumm needed Petitioner to get "back into good

19

– good graces" with Palma. *Id*. Austin recognized that Gumm would assert her Fifth Amendment

20

right to remain silent, but was interested in testimony regarding her motivations behind her

21

actions. *Id.* at 233-34. The trial court determined Austin could not question Gumm about her

22

propensity to go back to a domestic violence perpetrator. *Id*. at 234.

23

24

REPORT AND RECOMMENDATION - 16

1    The prosecutor then argued that Petitioner could not elicit testimony about Gumm

2    allegedly stealing a vehicle because it was inadmissible under evidence rule 404(b) and because

3    she had not yet been convicted. *Id*. The trial transcript reflects that Austin was notifying the trial

4    court of Petitioner's desire to pursue a specific line of questioning that Austin did not think was

5    permissible. *Id*. at 237-38. The trial court encouraged Austin to continue making calls and

6    proceeding as he deemed appropriate. *Id*. at 238. It does not appear Austin questioned Gumm

7    about the pending criminal charges.

8    Based on a review of the record, Petitioner has not shown Austin's decision to not cross-

9    examine Gumm regarding pending criminal charges resulted in ineffective assistance. Gumm

10   had charges pending against her, would have pleaded the Fifth, and would have needed to have

11   her court-appointed counsel available if she was questioned on the pending charges. Petitioner

12   has not shown that Austin's decision to not question Gumm about her pending criminal charges

13   was unreasonable. Further, Petitioner has not shown that this line of questioning would have

14   resulted in any admissible evidence or resulted in altering the outcome of the trial. Therefore,

15   Petitioner has not shown the state court's determination that counsel was not ineffective for

16   failing to question Gumm about a pending criminal conviction was contrary to, or an

17   unreasonable application of, clearly established federal law. *See Wildman v. Johnson*, 261 F.3d

18   832, 839 (9th Cir. 2001) ("[Petitioner's] disagreement with trial counsel's tactical decision

19   cannot form the basis for a claim of ineffective assistance of counsel.") (citing *Guam v. Santos*,

20   741 F.2d 1167, 1169 (9th Cir. 1984)).

21   Second, Petitioner argues Austin was ineffective when he refused to argue to the trial

22   court that Palma's testimony was necessary. The record shows that, during trial, Austin indicated

23   to the trial court that he was not intending to call Palma as a witness because there were "some

24

reasons not . . . to do it." Dkt. 19-1 at 33. However, after a recess, Petitioner's counsel notified

the trial court that he was interested in calling Palma as a defense witness. *Id*. at 34. The trial

court heard concerns from the parties that Palma would need court-appointed counsel because

she had criminal matters pending and would have limitations on her ability to testify. *Id*. at 34-

35. The trial court notified Palma of her Fifth Amendment right to remain silent and appointed

her counsel. *Id*. at 35-38.

After meeting with Palma, Palma's appointed counsel spoke with the trial court and he

stated he was "lost as to why any of what Ms. Palma has to testify to would be in any way

relevant to the discourse of this trial." Dkt. 19-1 at 58. He stated that Palma did not want to have

to testify to incriminate herself and would be "taking the Fifth" about the things that she would

be asked about on the stand. *Id*. Petitioner then moved to have Austin removed as his counsel

because Austin would not call Palma to the stand. Dkt. 19-1 at 61-63. Austin stated that it was

his position that Petitioner wanted Palma called to the stand for the sole purpose of "taking the

Fifth." *Id*. at 63. Palma's attorney stated that she would primarily be "taking the Fifth" but there

could be some relevant evidence related to infidelity that would not be protected by the Fifth

Amendment. *Id*. at 64-67. Palma's counsel concluded that he did not know how Palma's

testimony would assist Petitioner and thought her testimony would be more prejudicial than

probative. *Id*. at 67. Austin stated he would be trying to question Palma about a pending hit-and-

run charge that was on-going involving Gumm because there was concern Gumm was trying to

pressure Palma regarding the hit-and-run to prevent Palma from testifying on Petitioner's behalf.

*Id*. The trial court declined to rule on the matter until later in the trial. *Id*. Later, Austin notified

the trial court that Petitioner was asking him to make an argument he could not ethically make

related to Palma. *Id*. at 101-02.

1    The record also reflects that Austin called Palma as a witness to provide an offer of proof.

2    Dkt. 19-1 at 332-33. Austin argued that Palma should be allowed to testify about a text message

3    she allegedly received from Gumm. *Id*. at 340-45. The trial court determined the statements

4    counsel sought to introduce were hearsay. *Id*. at 345. The record also reflects that Palma was

5    exerting her Fifth Amendment rights to "everything else." *Id*. at 347.

6    A review of the record shows Petitioner and Austin disagreed about whether calling

7    Palma to the stand was ethical and if it would benefit Petitioner. Austin raised concerns to the

8    trial court yet continued to pursue different options for putting Palma on the stand. For example,

9    Palma was given court-appointed counsel to advise her regarding her potential testimony. Her

10    counsel directed her to "pled the Fifth" on nearly every matter that would be relevant to

11    Petitioner's trial. Moreover, Palma's counsel concurred that Palma's testimony appeared more

12    prejudicial to Petitioner than probative.

13    Petitioner has not shown his counsel was ineffective for failing to argue to the trial court

14    that Palma's testimony was necessary, nor has he shown counsel's decision to not call Palma as a

15    witness was ineffective. Petitioner has not shown that Palma would have presented admissible

16    testimony that would have impacted result of the trial. The Court finds Petitioner has failed to

17    demonstrate the state court's conclusion that counsel was not ineffective for his conduct

18    surrounding Palma's testimony was contrary to, or an unreasonable application of, clearly

19    established federal law. *See Morris v. California*, 966 F.2d 448, 456 (9th Cir.1991) (a tactical

20    decision not to call a particular witness cannot form the basis of an ineffective assistance of

21    counsel claim, even if the defendant disagrees with the decision).

22

23

24

REPORT AND RECOMMENDATION - 19

In sum, Petitioner has not shown that the state court's conclusion that counsel did not provide ineffective assistance was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court recommends Ground 2 be denied.

### III.    Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, Petitioner's grounds may be resolved on the existing state court record.

### IV.    Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement

to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this case.

**V.    Conclusion**

For the above stated reasons, the Court concludes Ground 4 fails to state a claim under Rule 2, Petitioner failed to exhaust Grounds 1 and 3 and these grounds are procedurally defaulted, and the state court's adjudication of Ground 2 was not contrary to, nor an unreasonable application of, clearly established federal law. The Court finds an evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be dismissed and a certificate of appealability not be issued.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 13, 2024**.

Dated this 22nd day of November, 2024.

David W. Christel
United States Magistrate Judge